Judith CHARLTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–05–01043–CR.

Court of Appeals of Texas,
Dallas.

March 19, 2008.

Russell Wilson, Werstein, Smith & Wilson, Addison, for Appellant.

Judith Charlton, Arlington, pro se.

William T. Hill, Crim. Dist. Atty., Laura Anne Coats, Dallas, for State.

Before Chief Justice THOMAS and Justices FITZGERALD and FRANCIS.

## OPINION

Opinion by Chief Justice THOMAS.

Appellant was convicted by a jury of interference with child custody. *See* Act of May 10, 2001, 77th Leg., R.S., ch. 332, § 1, 2001 Tex. Gen. Laws 603, 603 (amended 2007) (current version at TEX. PEN.CODE ANN. § 25.03(a) (Vernon Supp.2007)). The trial court assessed punishment at two years' incarceration, suspended the sentence, and placed appellant on community supervision for five years. In one issue, appellant contends the evidence was legally and factually insufficient to support the verdict because the child custody order appellant was accused of violating was not entered until after the indictment was returned and, even with an applicable court order, appellant did not knowingly violate the terms of the order. We affirm.

### Factual and Procedural Background

Appellant and Cedric Tribble were romantically involved for approximately four years and, on April 24, 2002, appellant gave birth to their son, Cameron. On September 12, 2002, appellant, Tribble, and a representative of the Texas Attorney General's Office (the AG) signed an Agreed Child Support Review Order pursuant to chapter 233 of the Texas Family Code. The agreed order found Tribble to be Cameron's biological father, named appellant and Tribble joint managing conservators of Cameron, gave appellant the right to determine Cameron's primary residence, restricted Cameron's residence to Dallas County or any contiguous county, established Tribble's right to standard possession of Cameron under chapter 153 of the family code, and required Tribble to pay child support through the AG. The agreed order was filed with the Dallas County District Clerk on September 13, 2002 and signed by a child support master on September 19, 2002.[1] Appellant and Tribble did not follow the periods of custody set out in the agreed order. Rather, Tribble visited Cameron almost every day at appellant's apartment.

In January 2003, appellant wrote Tribble a letter stating she wanted to move to the Virgin Islands with Cameron. Tribble told appellant she could move, but could not take Cameron. On February 10, 2003, appellant and Tribble requested the AG discontinue child support services. Tribble was attempting to buy a condominium

---

1. In 2003, the Texas Legislature changed the title of a child support master to associate judge. Act of May 27, 2003, 78th Leg., R.S., ch. 1258, §§ 1–28, 2003 Tex. Gen. Laws 3564, 3564–70.

for appellant and Cameron to live in, and both parties believed removing the automatic child support deduction from his paycheck would help his credit. However, Tribble continued to pay child support directly to appellant.

In March 2003, appellant wrote Tribble another letter saying Tribble was "worthless" and she wanted to move to the Virgin Islands. In May 2003, appellant told the AG she was moving to the Virgin Islands. The AG did not tell appellant the agreed order was still in place or that she needed to request the agreed order be modified before leaving Dallas. Appellant did not tell Tribble about her plans to move.

On Friday, June 6, 2003, Tribble went to appellant's apartment to visit Cameron. Appellant's apartment was in total chaos, and she had obviously moved. Appellant called Tribble the next day and said she was in the Virgin Islands. Tribble later returned to appellant's apartment with the agreed order and called the police.

In July 2003, Tribble traveled to the Virgin Islands to visit appellant and Cameron. Appellant refused to discuss bringing Cameron back to Texas. When Tribble told appellant she was violating the agreed order and his rights, appellant responded that Tribble no longer had any rights to Cameron because the AG had discontinued child support services. Appellant testified she knew the agreed order gave Tribble custody rights to Cameron, but believed the entire agreement had been dismissed when the AG discontinued child support services.

After returning from the Virgin Islands, Tribble made a written statement with police and charges were filed against appellant. He also continued his efforts to convince appellant to return to Texas. At one point, Tribble bought appellant a plane ticket and requested the warrant for her arrest be lifted so she could return. Appellant did not return to Texas, and Tribble did not see Cameron for six months.

Appellant was indicted in October 2003. The indictment alleged appellant:

> [o]n or about the 7th day of June A.D., 2003 in the County of Dallas and said State, did unlawfully then and there intentionally and knowingly take and retain CAMERON TRIBBLE, a child younger than 18 years, knowing that the taking and retention violated the express terms of a judgment and order of the 330th District Court of Dallas County, Texas, signed SEPTEMBER 12, 2002, disposing of the child's custody.

On November 24, 2003, the judge of the 330th District Court formally adopted the agreed order with the provision "[t]he Order is adopted by this court expressly noting that [appellant] no longer resides in Dallas County and that this order is subject to further investigation pursuant to provisions of the *UCCJEA*."

In late 2003, appellant was arrested in the Virgin Islands. Marvis Woods, an investigator for the Dallas County Sheriff's Office, traveled to the Virgin Islands in December 2003 with a governor's warrant to escort appellant back to Texas. According to Woods, a governor's warrant is issued only when the defendant fights extradition. Appellant testified she was planning to return to Dallas using the ticket provided by Tribble, but was arrested two days before her scheduled flight. She did not knowingly fight extradition, but simply followed her lawyer's advice.

The jury found appellant guilty and she appealed.

### Sufficiency of the Evidence

Appellant first contends the evidence is legally insufficient to support the verdict because the indictment alleged she violated an order of the 330th District Court signed

September 12, 2002 while the evidence shows the judge did not sign the order until November 24, 2003. Appellant also claims the evidence is legally and factually insufficient to support the verdict because (1) no valid court order existed until November 24, 2003 when the district court judge formally adopted the order and (2) she believed the entire order was dismissed on February 10, 2003 and, therefore, did not knowingly violate the order.

### Standard of Review

When reviewing challenges to the legal sufficiency of the evidence, we consider all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim. App.2005). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all of the evidence presented by either side. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000).

In a factual sufficiency review, we view all the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App.2006). To reverse a case on a factual sufficiency challenge, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict or that the verdict seems clearly wrong or manifestly unjust. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006), *cert. denied*, 552 U.S. 842, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007) (citing *Watson*, 204 S.W.3d at 417). In examining a factual sufficiency chal-

lenge, we are permitted to substitute our judgment for the jury's when considering weight and credibility of the evidence only "to a very limited degree." *Id.* at 625 (explaining factual sufficiency jurisprudence still requires appellate court to afford "due deference" to fact finder's determinations).

### Existence of Court Order

A person commits the offense of interference with child custody if the person takes or retains a child younger than eighteen years of age when the person knows the taking or retention of the child violates the express term of a judgment or court order disposing of the child's custody. *See* Act of May 10, 2001, 77th Leg., R.S., ch. 332, § 1, 2001 Tex. Gen. Laws 603, 603 (amended 2007) (current version at TEX. PEN.CODE ANN. § 25.03(a) (Vernon Supp. 2007)). Appellant does not dispute the agreed order disposed of custody of Cameron or that she took Cameron to live in the Virgin Islands in June 2003. Rather, she claims the evidence is legally and factually insufficient to support the verdict because the order was signed by the judge of the 330th District Court on November 24, 2003 and, therefore, she could not have violated the terms of the order in June 2003.

### A. Signing of Order by Child Support Master

In September 2002, the family code authorized a district court to refer a child support review order to a family court master. Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 241, 243 (amended 2003) (current version at TEX. FAM.CODE ANN. §§ 201.101(d), 201.108 (Vernon Supp.2007)); TEX. FAM. CODE ANN. § 233.001 (Vernon 2002). The master did not have the power to render and sign a final order on the merits of the case. Act of May 20, 1999, 76th Leg., R.S.,

ch. 556, § 42, 1995 Tex. Gen. Laws 3058, 3070 (amended 2001, 2003) (current version at TEX. FAM.CODE ANN. § 201.104 (Vernon Supp.2007)). However, if the master's order was not appealed, and the order did not involve enforcement by contempt or immediate incarceration, the master's order became the order of the court without ratification by the district judge after the time for appeal to the district court passed. *Id.* at 3070 (current version at TEX. FAM.CODE ANN. § 201.1041 (Vernon Supp.2007)). Any appeal to the district court was required to be filed within three days of the party receiving notice of the substance of the master's order. *Id.* at 3070–71 (current version at TEX. FAM.CODE ANN. § 201.1042 (Vernon Supp.2007)); TEX. FAM.CODE ANN. § 201.015 (Vernon 2002).

Appellant signed the agreed order on September 12, 2002 and admitted she had knowledge of the substance of the order. The master signed the order on September 19, 2002. Because neither appellant nor Tribble appealed the order, it became a final order of the district court after the three-day appeal period passed. *In re Att'y Gen.,* 162 S.W.3d 739, 743 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding) (per curiam). Accordingly, there was a court order disposing of the custody of Cameron when appellant took the child to the Virgin Islands in June 2003.

### B. Failure of Trial Court to Timely Sign Order

■ Appellant also argues there was no valid order because the agreed order was not signed within the statutory three-day period set out in section 233.024 of the family code.[2] Although section 233.024 provides the trial court shall sign an agreed child support review order within three days after the order is filed with the district clerk, it does not specify the consequences of the court's failure to do so.

■■ In interpreting a statute, we seek to determine and give effect to the legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005); *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex. 2000).[3] In determining this intent, we first look to the statute's plain and common meaning. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex.2004). We may also consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005).

■ Section 233.024 of the family code states the trial court shall sign an agreed order within three days of the order being filed. The word "shall" is generally recognized as mandatory, creating a duty or obligation. *Id.* § 311.016(2); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). However, language that appears to impose a mandatory duty can be only directory when that interpretation is more consistent with the legislature's intent. *Wilkins,* 47 S.W.3d at 493. In

---

2. Section 233.024 of the family code provided "[i]f the court finds that all parties have appropriately agreed to a child support review order and that there is waiver of service, the court shall sign the order not later than the third day after the filing of the order." Act of May 22, 2001, 77th Leg., R.S., ch. 1023, § 68, 2001 Tex. Gen. Laws 2240, 2258 (amended 2003) (current version at TEX. FAM.CODE ANN. § 233.024 (Vernon Supp.2007)).

3. Because we are construing a civil statute, we rely on civil authority for guidance. *See* TEX. GOV'T CODE ANN. §§ 312.001–.016 (Vernon 2005) (construction rules for civil statutes). However, criminal statutes are also construed so as to give effect to the legislature's intent. *Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex. Crim.App.1991).

making this determination, we consider "the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Id.* at 494. When, as here, the statute is "silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences." *Id.*

By enacting the master system, the legislature sought to increase the effectiveness of the child support system and bring cases to a timely resolution. *In re Att'y Gen.*, 162 S.W.3d at 742. It, therefore, required the courts to act quickly to implement an agreed order that affected the support of the child. However, nothing in the statute makes an agreed order signed after the three-day period void. Indeed, such a reading of the statute runs directly contrary to its purpose of efficiently providing for the support of children. Accordingly, the trial court's failure to sign the agreed order within three days of filing with the district clerk did not make the order void.

We conclude there is both legally and factually sufficient evidence that a court order disposing of custody of appellant's child was in effect in June 2003 when appellant took Cameron to live in the Virgin Islands and during the time she remained there with him.

### Variance

 Appellant next contends the evidence is legally insufficient because the indictment alleged she violated an order signed by the 330th District Court on September 12, 2002, while the evidence showed the judge of that court did not sign the order on that day. A variance occurs when there is a discrepancy between the allegations in the indictment and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex.Crim.App.2001). A variance

must be material in order to render the evidence insufficient to support the verdict. *Id.* at 247–48. To determine if a variance is material we consider whether the indictment sufficiently informed appellant of the charge against her to allow her to adequately prepare a defense and whether the variance would subject appellant to the risk of being prosecuted again for the same offense. *Id.* at 248. The burden of demonstrating the variance is material is on appellant. *Santana v. State*, 59 S.W.3d 187, 194–95 (Tex.Crim.App.2001).

 On appeal, appellant has not argued the September 12, 2002 date in the indictment provided her with insufficient notice of the charges against her or subjected her to the risk of being prosecuted twice for the same offense. In the trial court, appellant filed a motion to quash the indictment on the basis that no court order was signed on September 12, 2002. She also premised her defense on her belief the order was not in effect after the AG discontinued child support services. Consequently, it is unlikely appellant did not know what court order she was alleged to have violated by taking Cameron to live in the Virgin Islands in June 2003, and her defense was in no way prejudiced by evidence the order was not signed by the judge of the 330th District Court on September 12, 2002. Further, there is no risk appellant could be prosecuted for the same offense because there was only one applicable order prior to June 2003. Accordingly, we conclude the variance between the indictment and the proof at trial is immaterial and does not render the evidence insufficient to support the verdict.

### Appellant's Mental State

 Appellant finally contends the evidence is legally and factually insufficient to support the jury's finding she knew taking Cameron to the Virgin Is-

lands was a violation of the agreed order. A person acts knowingly with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. TEX. PEN. CODE ANN. § 6.03(b) (Vernon 2003). A person also acts knowingly with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* Knowledge may be inferred from the person's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App.2002); *Martinez v. State*, 833 S.W.2d 188, 196 (Tex.App.-Dallas 1992, pet. ref'd).

Appellant signed the agreed order that not only provided Tribble with periods during which he was entitled to custody of Cameron, but restricted Cameron's county of residence to Dallas County and contiguous counties. Appellant also knew Tribble would not consent to her moving Cameron to the Virgin Islands. Regardless, in May 2003 appellant told the AG, but not Tribble, that she was moving to the Virgin Islands and then moved, taking Cameron with her. After discovering appellant and Cameron had moved, Tribble went to the Virgin Islands and told appellant she was in violation of the agreed order and his rights. Appellant did not voluntarily return to Dallas.

Taken in the light most favorable to the verdict, the evidence was sufficient to support the jury's finding appellant knowingly moved Cameron to the Virgin Islands in violation of the agreed order. Further, viewing the evidence in a neutral light, the jury's verdict of guilt is rationally justified by the evidence.

We conclude the evidence is legally and factually sufficient to support the jury's verdict. Therefore, we overrule appellant's issue and affirm the trial court's judgment.