# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-16-00085-CV
_____

### RENT-A-CENTER TEXAS, L.P., Appellant

### V.

### PATRICIA BELL AND DAVID BELL, Appellees

**On Appeal from the 258th District Court**
**San Jacinto County, Texas**
**Trial Cause No. CV14,434**

## MEMORANDUM OPINION

Appellant Rent-A-Center Texas, L.P., appeals from the trial court's order denying its motion to compel arbitration in a suit brought against it by Patricia and David Bell. The Bells' suit is based on a dispute that occurred between the Bells and an employee of Rent-A-Center (RAC) concerning a rental purchase agreement that Patricia signed with RAC and includes causes of action for assault, trespass, intentional infliction of emotional distress, and violating section 9.609 of the Texas Business and Commercial Code. In three issues on appeal, RAC complains the trial

1

court abused its discretion by denying its motion to compel arbitration. Because the arbitration agreement clearly and unmistakably provides that the arbitrator has the power to decide questions of substantive arbitrability, we conclude that the trial court abused its discretion by deciding the arbitrability of the Bells' disputes against RAC and by denying RAC's motion to compel. Accordingly, we reverse the trial court's order denying arbitration and remand to the trial court with instructions to enter an order granting RAC's motion to compel.

Background

In October 2014, Patricia Bell entered into a rental purchase agreement with RAC for the rental of furniture and accessories. The rental purchase agreement contains a consumer arbitration agreement that states: "An Arbitration Agreement comes with and is incorporated into this rental purchase agreement. You should read the Arbitration Agreement before signing this agreement." Patricia signed the rental purchase agreement and the incorporated arbitration agreement. There is no evidence in the record showing that Patricia exercised her right to reject the arbitration agreement.

In December 2014, an employee of RAC went to the Bells' home to photograph furniture that was covered under the rental purchase agreement. A dispute arose when RAC's employee refused to leave without the furniture. When

2

the Bells demanded that the employee leave, he refused and pushed Patricia, causing her alleged injuries. At that point, David Bell, Patricia's husband, escorted the employee out of the home and called the police. In May 2015, the Bells' attorney sent RAC a notice of dispute as required by the arbitration agreement, indicating the intent to pursue the Bells' claims in arbitration. However, in November 2015, the Bells filed suit against RAC without taking any further action to initiate arbitration. RAC filed a motion to compel arbitration and to dismiss the Bells' suit.

The trial court conducted a hearing on RAC's motion to compel. RAC argued that Patricia signed a rental purchase agreement along with a consumer arbitration agreement stating that all claims and disputes between the parties would be submitted to arbitration. RAC disputed the Bells' argument that Patricia's assault claim and David's intentional infliction of emotional distress claim fell outside the scope of the parties' arbitration agreement. RAC argued that the Bells' tort claims were covered by the arbitration agreement, which specifically states that it covers any dispute or claim between the parties, including tort claims.

RAC also disputed the Bells' argument that because David was a non-signatory to the rental purchase agreement and the arbitration agreement, David's claim was not subject to arbitration. According to RAC, even though David is a

3

non-signatory to the arbitration agreement, David's claim is covered under the agreement because he is a third-party beneficiary to the items RAC provided to Patricia. RAC claimed that under the arbitration agreement, David is a third-party beneficiary who is required to arbitrate his claim against RAC because he lived in the home with Patricia and used the furniture and televisions that RAC provided. RAC also noted that the Bells' attorney sent RAC a letter providing notice of the Bells' dispute and expressing the intent to pursue the Bells' causes of action through arbitration as per the rental purchase agreement.

During the hearing, the Bells argued that Patricia's assault claim did not fall within the scope of the agreement because intentional torts are not generally part of an arbitration agreement in a business contract. According to the Bells' counsel, the test to determine whether an intentional tort falls within the scope of an arbitration agreement is whether the tort can stand alone without the contract, and Patricia's assault claim does not require proof of the contract. The Bells also argued that David is not a third-party beneficiary because he was not specifically named in the contract. The Bells requested that the trial court separate the claims, keeping Patricia's intentional tort claim and David's claim since he was a non-signatory, and sending the remaining claims to arbitration.

RAC responded that it was improper to separate the causes of action because they were intertwined. According to RAC, all the claims should go to arbitration because the contract specifically states that torts fall within the scope of the arbitration agreement, and the facts regarding the assault relate to the rental purchase agreement. It is undisputed that the RAC employee was at the Bells' home because of their nonpayment under the agreement. RAC further argued that David's claim for intentional infliction of emotional distress arising from witnessing the RAC employee assault Patricia is a derivative claim that is also covered by the arbitration agreement. After hearing the parties' arguments, the trial court denied RAC's motion to compel arbitration. The trial court did not enter any findings of fact or conclusions of law. RAC timely filed this interlocutory appeal.

Standard of Review and Applicable Law

This is an appeal pursuant to section 51.016 of the Texas Civil Practice and Remedies Code, which authorizes interlocutory appeals of matters subject to the Federal Arbitration Act (FAA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015); *see also* 9 U.S.C.A § 16. The arbitration agreement expressly states that it is governed by the FAA. A party attempting to compel arbitration under the FAA must establish that there is a valid arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Rubiola*, 334 S.W.3d

5

220, 223 (Tex. 2011) (orig. proceeding). There is a presumption favoring agreements to arbitrate under the FAA, but the presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding). If the party seeking to compel arbitration proves that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (original proceeding). The trial court's determination of the arbitration agreement's validity is a question of law that we review *de novo*. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. In determining the validity of the arbitration agreement under the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). We may not expand upon the terms of the contract or tolerate a liberal interpretation of the contract by reading into it a voluntary agreement to arbitrate when none exists. *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 883 (Tex.

App.—Fort Worth 2012, no pet.). The plain meaning of the contractual language must clearly indicate the intent to arbitrate. *Id.*

Once the party seeking to compel arbitration establishes that a valid agreement exists, the trial court must then determine whether the arbitration agreement covers the claims at issue. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). The determination of whether the arbitration agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation. *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex. App.—Fort Worth 2003, no pet.). "If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* at 411. The court's primary concern in construing the contract is to ascertain the true intention of the parties as expressed in the contract. *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

## Analysis

In issue one, RAC complains the trial court erred by deciding gateway issues concerning the interpretation, application, and enforceability of the arbitration agreement when the contractual language clearly and unmistakably states that the arbitrator should decide those issues. Alternatively, in issues two and three, RAC complains that even if the trial court had the authority to decide arbitrability, it

7

abused its discretion by denying RAC's motion to compel based on the Bells' argument that their claims did not fall within the scope of the arbitration agreement.

In determining whether the trial court abused its discretion by denying RAC's motion to compel, we review the trial court's interpretation of the parties' arbitration agreement *de novo*. *See Jabri*, 108 S.W.3d at 410. Applying contract construction principles, we must review the entire arbitration agreement to determine whether it is so worded that it can be given a certain legal interpretation. *See id.* at 412. If the agreement clearly demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, then the trial court's ruling as to the scope of the arbitration agreement was an abuse of discretion. *See generally id.* at 410.

When a dispute involving an arbitration agreement is brought to court for resolution, the trial court is obligated to determine whether the parties agreed to submit a particular issue to arbitration. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex. App.—El Paso 2012, no pet.) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960)). "[A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Parties

8

can agree to arbitrate "'gateway' questions of 'arbitrability,'" such as whether an agreement covers a particular claim. *Id.*; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 520-21 (Tex. 2015) (explaining that generally substantive arbitrability questions addressing the existence, enforceability, and scope of an agreement are for courts to decide, while procedural arbitrability questions addressing the construction and application of limits on that agreement are for arbitrators to decide). When an arbitration provision gives the arbitrator the power to resolve gateway issues regarding the validity and enforceability of the arbitration agreement, questions of substantive arbitrability are transferred from the court to the arbitrator. *IHS Acquisition*, 387 S.W.3d at 807. "These 'gateway matters' include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate[,]" and also include the question of arbitrability of a non-signatory's claim. *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643); *Id.* at 231 (citing *Contec Corp., v. Remote Solution Co. Ltd.*, 398 F.3d 205, 209, 211 (2d Cir. 2005)).

A trial court should not assume that the parties agreed to arbitrate substantive arbitrability unless there is clear and unmistakable evidence that they intended to do so. *Saxa Inc.*, 312 S.W.3d at 229 (citing *First Options of Chicago,*

9

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). (If the agreement clearly demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, the trial court lacks the power to decide that issue. *See First Options of Chicago, Inc.*, 514 U.S. at 943 (concluding that the question of determining primary power to decide arbitrability turns upon what the parties agreed to regarding the matter). Thus, when an arbitration agreement clearly and unmistakably demonstrates the parties' intent to confer on the arbitrator the power to determine substantive arbitrability, questions regarding gateway issues that are normally decided by the court will be submitted to the arbitrator. *See id.*

The arbitration agreement in this case states that it is "between RAC and the Consumer[,]" and defines "[c]onsumer" to mean the "customers who sign this Agreement." "Consumer Contract" is defined as "the consumer lease, rental-purchase agreement, or retail installment contract between the Consumers and RAC." The agreement broadly defines the terms "you" and "your" to mean the "[c]onsumer, customer, lessee, renter, user, buyer, and other third-party beneficiaries of the items or services RAC is providing, will provide, or has provided to you." The agreement states that "you and RAC hereby agree that, in the event of any dispute or claim between us, either you or RAC may elect to have

10

that dispute or claim resolved by binding arbitration . . . ." The agreement to arbitrate states that it is "intended to be interpreted as broadly as the FAA allows."

Claims subject to arbitration include, but are not limited to, "claims arising under, arising out of, or relating in any way to any Consumer Contract entered into between you and RAC at any time, and/or any services rendered under or that relate to any such Consumer Contract[.]" The agreement specifies that claims subject to arbitration include "claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation[,] or ordinance[.]" Additionally, the agreement includes claims concerning "any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any contention that all or any part of this agreement to arbitrate is void or voidable." According to the agreement, "arbitration will be administered by the American Arbitration Association ("AAA") and . . . shall proceed in accordance with the AAA's Commercial Arbitration Rules . . . ." Under AAA Rule R-7(a), the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect

to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."[1]

The arbitration agreement clearly and unmistakably provides that the arbitrator has the power to resolve any disputes relating to the interpretation, applicability, and enforceability of the agreement, and Patricia signed the agreement and assented to having these gateway issues determined by the arbitrator. RAC and Patricia also agreed that any arbitration would be conducted in accordance with the AAA's Commercial Arbitration Rules. The parties' agreement to a broad arbitration clause that expressly incorporates rules giving the arbitrator the power to rule on his or her own jurisdiction and to decide questions of substantive arbitrability provides clear and unmistakable evidence of RAC's and Patricia's intent to delegate gateway issues of arbitrability to the arbitrator, including the arbitrability of David's claim even though he is a non-signatory. *See Schlumberger Tech., Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802-03 (Tex. App.—Houston [1st. Dist.] 2011, no pet.); *Saxa, Inc.*, 312 S.W.3d at 230-31; *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Fort Worth 2009, pet. denied).

---

[1]American Arbitration Association, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES, R-7, p.13, (Rules amended and effective Oct. 1, 2013), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased (last visited Aug. 5, 2016).

Because the arbitration agreement clearly and unmistakably provides that the arbitrator is to decide questions of substantive arbitrability, the trial court must permit the arbitrator to decide those issues. *See McGehee v. Bowman*, 339 S.W.3d 820, 825-26 (Tex. App.—Dallas 2011, no pet.). We conclude that an arbitrator has the authority to decide the arbitrability of the disputes between the Bells and RAC. Accordingly, the trial court abused its discretion by denying RAC's motion to compel arbitration. We sustain RAC's first issue. Because of our disposition of RAC's first issue, we need not consider RAC's remaining issues. *See* Tex. R. App. P. 47.1. We reverse the trial court's order denying RAC's motion to compel and remand this case to the trial court with instructions to enter an order granting the motion to compel arbitration.

REVERSED AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 15, 2016
Opinion Delivered August 25, 2016

Before McKeithen, C.J., Kreger and Horton, JJ.

13