

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00212-CR

MICHAEL ANTHONY HAMMACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 32355CR

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

During Michael Anthony Hammack's Hunt County jury trial on a charge of interfering with child custody, Rhonda West, investigator with the Texas Department of Family and Protective Services (Department), testified that she and another Department investigator, Amber Davidson, went to Hammack's residence to attempt to serve an Order of Protection of a Child in an Emergency (Order) dated February 27, 2018, that awarded custody of Hammack's child to the Department. At the residence, Davidson explained to Hammack that, pursuant to the Order, they were there to take custody of the child. Davidson testified that Hammack understood such result from the Order, became aggressive, and ordered them off the property. Davidson and West departed, but then took custody of the child at the child's school with the assistance of a peace officer and telephoned Hammack to tell him that the Department (1) had obtained custody of the child as a result of the Order and (2) had thus picked her up at school. The child managed to escape from the Department's possession and was later, temporarily, secreted by Hammack.

As a result, Hammack was convicted of interfering with child custody, sentenced to two years' confinement in state jail, and fined $10,000.00. The sentence was suspended and Hammack was placed on five years' community supervision. As a condition of Hammack's community supervision, the trial court ordered him confined to jail for 180 days.[1]

In his sole point of error on appeal, Hammack claims the evidence was legally insufficient to prove he knew he was violating the terms of a judgment or order when he secreted the child.

---

[1]The trial court also ordered Hammack to pay $3,320.00 in attorney fees for his court-appointed counsel. Hammack informed the trial court that he could afford to pay $100.00 in attorney fees per month.

Because we find the evidence legally sufficient to support the conviction, we affirm the trial court's judgment.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the state jail felony of interfering with child custody if he or she takes or retains a child "when the person knows that the person's taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's

custody." TEX. PENAL CODE ANN. § 25.03(a)(1), (d). Hammack does not contest the fact that he secreted the child in violation of the terms of a temporary order. Instead, he challenges the jury's finding that he had knowledge of the order. While it is the State's burden to prove the element of knowledge beyond a reasonable doubt, knowledge "can be inferred from the acts, words, and conduct of the accused." *Louis v. State*, 329 S.W.3d 260, 269 (Tex. App.—Texarkana 2010), *aff'd*, 393 S.W.3d 246 (Tex. Crim. App. 2012); *see Charlton v. State*, 334 S.W.3d 5, 12 (Tex. App.—Dallas 2008, no pet.) (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)).

The State indicted Hammack for taking or retaining his child "when the said defendant knew [the retention of the child] . . . violated the express terms of . . . [an] Order of Protection of a Child in an Emergency." Hammack stipulated that this Order granted the Department the temporary sole managing conservatorship and "the sole right of possession and physical custody" of the child until the March 9, 2018, temporary hearing. A writ of attachment securing the child's possession in favor of the Department was also issued.

At trial, Hammack established that he was never served with the Order. However, the jury was presented with other evidence suggesting his knowledge about its contents.

This record contains the above evidence of the Department's attempt to serve and execute the Order at Hammack's residence and the follow-up telephone call to Hammack. Also, during the call, Hammack reportedly questioned how Davidson had obtained the Order, and, when Davidson replied with the name of the judge who signed the Order, Hammack said, "[T]hat can't be possible because I only work with a different judge." Davidson testified that, as a result of their telephone conversation, Hammack understood the Order and knew that the Department had

4

obtained custody of the child. Davidson asked Hammack to meet her at the office to discuss the situation, but Hammack did not comply. It was after this telephone conversation that the child escaped from the Child Protective Services (CPS).

Kelvin Gene Rhodes, Jr., an officer with the Commerce Police Department (CPD), testified that he was asked to help locate the child. According to Rhodes, the Department believed that the child was at Hammack's house. Rhodes and CPS workers travelled to Hammack's home, but he told them he had not seen the child. Rhodes informed Hammack that the child was "missing from the custody of [the Department]." In Rhodes' opinion, Hammack was not surprised by this information and knew the child was supposed to be with the Department. Rhodes' search of the home revealed that the child was not there.

Alvarado Torres, another investigator with the Department, testified that, shortly after Rhodes confronted Hammack at his house, he saw the child, the child's boyfriend, and Hammack walk into Hammack's mother's house. Torres called the local police and waited outside. A police officer, Marcus Cantera, testified that he arrived at the house and spoke with Hammack's mother, Linda Hammack. Cantera testified that he told Linda that the child escaped from the Department after the writ of attachment was executed. In searching Linda's home, Cantera heard people talking in the attic and found Hammack on a ladder leading to the attic. Cantera testified that Hammack began yelling and accusing Cantera of violating his constitutional rights. On witnessing the confrontation, Linda recanted her prior consent to Cantera's search of the house. Cantera left, even though he heard people in the attic. He added that Hammack followed him outside and saw Torres' vehicle waiting to transport the child if found. According to Cantera, Hammack "was told

5

about the order before [Cantera] got there" and knew that the Department had temporary custody of the child.

The child was found in Hammack's home on March 6.[2] Davidson and Laura Sumner, the clerk for Choctaw County, Oklahoma, testified that Hammack brought the pregnant child to Oklahoma and consented to her marriage to her older boyfriend on March 5. A copy of the marriage certificate containing Hammack's signature was presented to the jury.

We conclude the evidence is legally sufficient to support the jury's finding that Hammack knew (1) the Order existed, (2) it granted sole custody of the child to the Department, (3) the Department had obtained a writ of attachment to secure the child, and (4) his possession of the child violated the Order. Although he was not formally served with the Order, West, Davidson, Rhodes, and Cantera testified Hammack was notified about the Order and knew the Department had obtained custody of the child. Davidson testified she again told Hammack that the Department had obtained custody of the child after the child was escorted to the CPS office. When the child went missing, Torres saw her, the boyfriend, and Hammack enter, but not exit, Linda's home. This testimony, combined with Cantera's testimony, showed that Hammack was at least participating in the child being secreted in Linda's attic. From this evidence, the jury could infer that Hammack knew he was violating the terms of the Order by possessing the child.

---

[2]According to Torres, the child escaped CPS offices again on March 6.

We find the evidence legally sufficient to support the jury's verdict of guilt. Accordingly, we overrule Hammack's sole point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     May 29, 2019
Date Decided:      May 30, 2019

Do Not Publish