

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-19-00463-CR

———————————————————

ERIK VANDERVOORT, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1620984R

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In two points, Appellant Erik Vandervoort appeals his convictions for his continuous sexual abuse and sexual assaults of Amanda.[1] In his first point, he urges that the trial court should have suppressed certain evidence discovered by Amanda's uncle, Kyle, and by police based on Kyle's discoveries. In his second point, he attacks the constitutionality of allowing a continuous-sexual-abuse conviction without jury unanimity regarding the underlying acts of abuse. Because we cannot conclude that the trial court erred by denying his suppression motion and because we previously rejected his arguments regarding the constitutionality of the continuous-sexual-abuse statute, we affirm the trial court's judgment.

## Background

On December 17, 2017, Vandervoort and his longtime partner[2] Hannah were fighting at the home they shared with four of Hannah's five children[3] when Hannah

---

[1] In an effort to protect the complainant's identity, we refer to her and her family members by aliases. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. 1982).

[2] The parties disagree over whether their relationship could be characterized as a common-law marriage. Hannah's father recalled that Vandervoort had called Hannah his "wife" "several times," and he assumed they were married. In his motion to suppress, Vandervoort referred to Hannah as his wife but also argued in the same motion that any such characterization was "wholly incorrect."

[3] Vandervoort is the father of three of those children, but not Amanda.

shot Vandervoort in the stomach.[4]   Vandervoort was hospitalized, Hannah was arrested, and by the next day, Hannah's father, Luke, had moved into the home to care for at least one of the children.  Hannah asked Kyle to go to the home and retrieve a "working computer" for her, specifically directing him to a pile of laptops located near the closet in the bedroom she shared with Vandervoort.[5]

When Kyle—who had a key to Hannah and Vandervoort's house—went to the home, he found the stack of computers under a pile of clothing in their "disheveled" room.  He recognized two computers as being from Ernst & Young and one—the Dell laptop at the top of the pile—as being from PrimeSource.  Despite only succeeding in powering up the PrimeSource laptop, Kyle took it and the other four laptops home with him, as well as a USB drive he found on the floor and an external hard drive.

Several days after he brought the computers to his house, Kyle turned on the PrimeSource laptop and used an administrative password he recalled from his time

---

[4]Amanda was not living in the home at the time of the shooting.

[5]According to Luke and Kyle, Hannah's request was not an unusual one.  Kyle and Vandervoort both worked as IT specialists; they previously worked together at PrimeSource Building Products; and, at the time of the shooting, they both worked at Ernst & Young.  Luke also had a background in IT.  He and Kyle each testified that it was common for the family members to call each other and ask for spare computers or computer parts.  Kyle testified that the family, including Vandervoort, always had several computers for various uses, that they would sometimes restore computers in order to reuse them, and that he had often "built" computers for family members. Kyle had helped Hannah with her computers on "[m]any occasions" in the past.

working at PrimeSource to log on to the computer. As Kyle explained, the first step of the process to make it a "working computer" involved saving any important photos or documents onto a USB drive or external hard drive and then wiping the laptop's hard drive and reloading Windows. But while he was looking through photos and documents, he discovered videos depicting Amanda in various states of undress. He found copies of some of the same videos on the external hard drive. And, upon reviewing the USB drive, he found a video of Vandervoort inappropriately touching an unidentifiable young girl in Amanda's bedroom at a prior residence.

Kyle contacted his attorney about the photos and videos and, with the attorney's assistance, turned over all of the laptops, the USB drive, and the external hard drive to the Arlington Police Department. He also executed an affidavit in which he recounted how Hannah had asked him to retrieve a laptop and get it into working condition for her, and how he had come across the photos and videos. Arlington police relied heavily on his affidavit in applying for and obtaining a search warrant to search the contents of the computers, external hard drive, and USB drive.

After an investigation, Vandervoort was arrested and charged with continuous sexual abuse, three counts of aggravated sexual assault, one count of inducing a child's sexual performance, six counts of indecency with a child by contact, and two counts of sexual assault. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a)(1), 22.011(a)(2), 22.021(a)(1)(B), 43.25(b). He moved to suppress the photos and videos discovered by Kyle on the PrimeSource laptop, the USB drive, and the external hard drive, as well as

4

all evidence recovered by the State on the laptop, USB drive, and external hard drive because the search warrant used to examine them relied heavily on Kyle's affidavit.

The trial court held a hearing on Vandervoort's suppression motion and denied it, orally finding that Hannah owned the laptops and had consented to Kyle's taking them from her home:

> [Hannah] legally was the owner of that stack of laptops because it was her house where she had resided until she was taken to jail. It was her bedroom. She gave [Kyle] consent to take the laptops, to take possession of them, and she gave [Kyle] consent to make a laptop workable for her by whatever means he needed to. And she also gave Kyle access to her house by having given him a key to the house.

The trial court also concluded that Kyle understood that he had Hannah's effective consent to take the computers and "make a laptop workable."

At trial, the jury heard evidence of Vandervoort's sexual abuse of Amanda beginning when she was 11 years old and continuing until age 16 or 17, when she saved up enough money to buy a loft bed on which the 400-pound Vandervoort could not reach her. Amanda recounted how he touched her breasts, touched her genitals more than 50 times, and masturbated next to her while she laid in bed. She also described his strict instructions about keeping her laptop turned on and in a certain place in her bedroom and his prohibition against closing the laptop or removing it from her room. According to Amanda, when she was 12, she found video recordings of her in her room and deleted them from the laptop. A later police search of the laptop confirmed her story—in the search, they found deleted videos of

5

Amanda in her room. Further analysis also showed that a Dell laptop had previously navigated to and used the camera on Amanda's laptop.

The jury found Vandervoort guilty of continuous sexual abuse and two counts of sexual assault that took place after Hannah had turned 14. It assessed punishments of 55 years on the continuous-sexual-abuse conviction and 20 years on each of the sexual-assault convictions. The trial court sentenced him accordingly, setting the first 20-year sentence to run consecutively to the 55-year sentence, and the second 20-year sentence to run consecutively to the first 20-year sentence.

## Discussion

### I. Suppression motion

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Texas exclusionary rule provides, in relevant part, that

> [n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the

6

Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal cause . . . .

Tex. Code Crim. Proc. Ann. art. 38.23(a). Here, the Texas exclusionary rule, not the exclusionary rule's federal constitutional counterparts, applies because this case does not involve government actions but concerns the actions of a private citizen.[6] *See State v. Ruiz*, 577 S.W.3d 543, 546 (Tex. Crim. App. 2019) ("[T]he Fourth Amendment does not apply to the actions of private individuals[.]"); *Miles v. State*, 241 S.W.3d 28, 34–36 (Tex. Crim. App. 2007).

To invoke the Texas exclusionary rule, Vandervoort, as the movant, bore the burden of showing that Kyle violated the law by accessing the laptop, USB drive, and external hard drive. *See State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011). Vandervoort argues that Kyle's access of the PrimeSource laptop, the USB drive, and the external hard drive violated the statute prohibiting a person from "knowingly access[ing] a computer, computer network, or computer system without the effective consent of the owner." *See* Tex. Penal Code Ann. § 33.02. As relevant here, an "owner" is defined as a person who has title to the property, possession of the property (lawful or not), or a greater right to possession of the property than the actor. *Id.* § 33.01(15). "Effective consent" includes consent by a person legally authorized to act for the owner. *Id.* § 33.01(12). Consent is not effective if it is (a) induced by deception or coercion, (b) given by a person the actor knows is not

---

[6]This is undisputed by the parties.

7

legally authorized to act for the owner; (c) given by a person known by the actor to be unable to make reasonable property dispositions, (d) given solely to detect the commission of an offense, or (e) used for a purpose other than that for which the consent was given. *Id.*

Vandervoort argues that (1) he did not consent to Kyle's accessing the laptops or computer equipment; (2) Hannah could not legally consent to or authorize Kyle's accessing the laptops or computer equipment because she was "utterly prohibited" from entering the home at the time; (3) Hannah could not be considered "legally authorized" to consent on Vandervoort's behalf because she had shot him the day before; and (4) even assuming Hannah was qualified to consent, Kyle exceeded that consent.

Nobody disputes that Vandervoort did not consent to Kyle's access. But Vandervoort's arguments that Hannah could not consent to Kyle's access fall short.

First, Vandervoort relies primarily on an alleged emergency protective order that he claims prohibited Hannah from entering the home after the night of the shooting. But no such order appears in the record before us (a fact Vandervoort acknowledges).[7] Even if we could assume that Hannah was prohibited from entering the home, Vandervoort recites no authority for the proposition that such an order

---

[7]The record contains an officer's application for such an order, but without the actual order, or other evidence as to its contents, we cannot ascertain its provisions or prohibitions. Nor can we determine when the order would have gone into effect.

8

would automatically divest Hannah of the right to authorize a third person to access her home on her behalf to retrieve her possessions. Nor does Vandervoort cite authority to support his premise that such a prohibition would vitiate Hannah's right to possession of the laptops and computer equipment (or any other property in the home, for that matter).

To the contrary, the trial court had sufficient evidence before it, and it was within its discretion, to determine that Hannah was an owner of the laptops and equipment. The trial court heard evidence that she and Vandervoort were longtime partners who shared a home together and with their children; that the family as a whole regularly shared computers and computer parts and equipment; that Kyle, Luke, and Vandervoort often restored computers for family members; and that the laptops and equipment were located in Vandervoort's and Hannah's shared room, exactly where she had directed Kyle to look.

We also do not agree with Vandervoort's contention that Kyle exceeded Hannah's consent by reviewing photos and using the USB drive and external hard drive. According to Kyle, Hannah asked him to get a computer in working order for her and, as he explained, that process entailed the saving of important documents and photos before wiping the laptop to start over. It was reasonable for the trial court to determine that her request that Kyle provide her a functional computer included his performing those additional acts, especially given Kyle's and Luke's testimony that this was common practice within the family.

9

Second, Vandervoort did not meet his burden to establish the required mens rea for a violation of the breach-of-computer-security statute. *See* Tex. Penal Code Ann. § 33.02. Relying on our sister court's interpretation of Section 33.02, the State argues that to have violated the breach-of-computer-security statute, Kyle must have accessed the computer with the knowledge that he lacked the owner's consent. *See Thomas v. State*, 586 S.W.3d 413, 421 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("[T]he 'knowing' mental state required by [S]ection 33.02 applies to both the 'access' and 'effective consent' elements of the offense."). We agree.

As the Court of Criminal Appeals has explained, there are three "conduct elements" that may be involved in an offense: (1) the conduct's nature, (2) the result of the conduct, and (3) the circumstances surrounding the conduct.[8] Tex. Penal Code Ann. § 6.03; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). The culpable mental state must apply to the essential "conduct elements" defined in a statute criminalizing such conduct. *McQueen*, 781 S.W.2d at 603.

---

[8]For example, where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. [*See, e.g.*, Tex. Penal Code Ann. §§ 47.02–.06] (gambling offenses). On the other hand, unspecified conduct that is criminalized because of its result requires culpability as to that result. *Alvarado* [*v. State*] 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)] (injury to a child); *Lugo-Lugo*[ *v. State*, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983)] (murder); *Kelly v. State*, 748 S.W.2d 236 (Tex. Crim. App. 1988) (injury to an elderly individual).

*McQueen*, 781 S.W.2d at 603.

A crime of circumstances is one in which "otherwise innocent behavior becomes criminal because of the circumstances under which it is done." *Id.* (citing theft as an example). As the Court of Criminal Appeals has explained in the context of the unauthorized use of a vehicle, "What makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission. Therefore, the unauthorized use of a motor vehicle is a 'circumstances' type offense, and the culpable mental state of 'knowingly' must apply to those surrounding circumstances." *Id.*

Similarly, breach of computer security is a crime of circumstances—what makes it unlawful is that the computer is accessed without the owner's consent. *Thomas*, 586 S.W.3d at 421 n.10 (holding the alleged unauthorized access of the defendant's iPhone photo application is a "circumstances" offense). Thus, the "knowing" mental state required by Section 33.02 applies to the "access" and "effective consent" elements. *Id.* at 421. In other words, proof of a breach-of-computer-security offense requires evidence that the actor "knowingly accessed a computer, computer network, or computer system, knowing that this act was without the effective consent of the owner." *Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

A person acts knowingly with respect to the circumstances surrounding his conduct when he is aware the circumstances exist. Tex. Penal Code Ann. § 6.03(b). Knowledge may be inferred from the person's acts, words, or conduct, and it can be

11

shown with circumstantial evidence.  *Thomas*, 586 S.W.3d at 421; *Charlton v. State*, 334 S.W.3d 5, 12 (Tex. App.—Dallas 2008, no pet.).

At the time Hannah asked Kyle to go to the home she shared with Vandervoort and get a "working computer," she and Vandervoort had been in a relationship for more than 10 years and had been raising children together.[9]  Kyle had a key to her home.  Hannah directed Kyle to a stack of laptops on the floor of the bedroom she shared with Vandervoort.  Kyle testified that it was common for him and Vandervoort to keep multiple computers around and restore them for family members; Luke testified it was also common for them to share spare computer parts with each other.  Kyle explained that he accessed the PrimeSource computer with an administrative password he and Vandervoort had used when they set it up for PrimeSource; he did not use Vandervoort's password or username.  Kyle testified that he took those items from the home so that he could get a computer "working," as Hannah had asked him to do.  And the first step of the process was to save any family

---

[9]We reject Vandervoort's contention that there is no "rational" argument that Hannah could have been authorized to consent to the computer access because she had shot Vandervoort the day before.  If anything lacks rational underpinning, it is Vandervoort's assertion.  His argument not only ignores the evidence that the parties shared the home and, according to Kyle's and Luke's testimonies, the computers and computer equipment, but also wholly fails to identify any logical connection between Hannah's authority to consent to computer access, on the one hand, and her shooting of Vandervoort, on the other.

12

photos or important documents to an external hard drive or USB.[10]  And at the hearing, Kyle testified that it was his understanding that he had consent to do "exactly" what he had done.  *See Thomas*, 586 S.W.3d at 421 (holding girlfriend did not violate Section 33.02 by using defendant's passcode to unlock his iPhone and view photos because there was no proof she knew she lacked his assent to do so); *cf. McQueen*, 781 S.W.2d at 604–05 (explaining the application of a mistake-of-fact defense relating to authorization to operate another's vehicle and that the trial court is free to believe or disbelieve the actor's claim of authorization).

Based on the facts in this case, we cannot conclude that the trial court erred by determining that Kyle's actions did not violate Section 33.02 and by denying the motion to suppress.  We therefore overrule Vandervoort's first point.

## II.  Jury unanimity in continuous-sexual-abuse cases

In his second point, Vandervoort attacks the constitutionality of allowing the submission of a continuous-sexual-abuse question to a jury without requiring jury unanimity to each of the underlying sexual acts.  *See* Tex. Penal Code Ann. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.").  He admits that we have overruled the same arguments before.

---

[10]Kyle testified that this first step was an important one to avoid the loss of sentimental photos or important documents before wiping a computer and reinstalling the operating system.

*Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.).  As we

explained in *Pollock*,

> The commission of two or more acts of sexual abuse over a specified
> time period—that is, the pattern of behavior or the series of acts—is the
> element as to which the jurors must be unanimous in order to convict.
> Thus, section 21.02(d) does not allow jurors to convict on the basis of
> different elements, and this court and our sister courts have held that the
> statute does not violate the state constitutional right to jury unanimity.

*Id.* (citations omitted).  Vandervoort's argument does not persuade us to depart from

this precedent.  We overrule his second point.

## Conclusion

Having overruled both of Vandervoort's points, we affirm the trial court's

judgment.


/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice


Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 29, 2021

14